1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                  Plaintiff,

        v.

RACHEL E. MILLER and TAMMY J.
HUMBYRD,

                  Defendants.

CASE NO. C10-5862BHS

ORDER GRANTING IN PART
AND RESERVING IN PART
DEFENDANT HUMBYRD'S
MOTION FOR SUMMARY
JUDGMENT,  DENYING
DEFENDANT MILLER'S
MOTION FOR SUMMARY
JUDGMENT, AND
REQUESTING MORE
BRIEFING

        This matter comes before the Court on the parties' respective motions for summary

judgment (Dkts. 25, 30). The Court has reviewed the briefs filed in support of and in

opposition to the motions and the remainder of the file and hereby grants in part and

reserves in part Defendant Tammy J. Humbyrd's ("Humbyrd") motion for summary

judgment, denies Defendant Rachel E. Miller's ("Miller") motion for summary judgment

for the reasons stated herein, and requests additional briefing for the reasons discussed

herein.

## I.  PROCEDURAL HISTORY

        On November 22, 2010, Plaintiff ("Prudential") filed its complaint in interpleader

against Humbyrd and Miller. Dkt. 1. On August 4, 2011, the Court dismissed Prudential,

a neutral stakeholder, and ordered it to place the remaining available insurance proceeds

at issue in this case into an interest bearing account with the Court. Dkt. 44.

On July 7, 2011, Miller filed a motion for summary judgment against Humbyrd. Dkt. 25. On July 8, 2011, Humbyrd filed a motion for summary judgment against Miller. Dkt. 30. The parties have fully briefed these motions.

## II.  FACTUAL BACKGROUND

This case, which is set for a bench trial, arises out of Defendants' separate claims to the same life insurance policy proceeds of the now deceased United States Army Private First Class Travis M. Humbyrd (PFC Humbyrd). *See, e.g.,* Dkt. 1 (Complaint). Prudential is no longer a party to this action. Humbyrd and Miller dispute who is entitled to the insurance proceeds from PFC Humbyrd's policy. *See* Dkts. 25, 30 (cross-motions for summary judgment seeking policy proceeds). Humbyrd is PFC Humbyrd's mother. Miller is PFC Humbyrd's ex-wife.

On June 17, 2009, PFC Humbyrd executed a Servicemembers' Group Life Insurance ("SLGI") Election and Certificate Form, Form SGLV-8286 ("SGLV"), pursuant to 38 U.S.C. 1965, *et seq.* Complaint ¶¶ 9, 11. On December 26, 2009, PFC Humbyrd died in a single car motor vehicle accident. *Id*. ¶ 13. On or about January 26, 2010, the Army certified a SGLI death benefit in the amount of $100,000. *Id*. ¶ 14. The Army forwarded a copy of the June 17, 2009 election form to Prudential. *Id*.

On December 29, 2009, Miller made a claim for the death benefit. *Id*. ¶ 15; *see also id*., Ex. D (copy of claim for benefits filed by Miller). On or about January 26, 2010, Prudential paid the $100,000 death benefit to Miller as the plan's principal. *Id*. ¶ 16.

Subsequent to Prudential's payment to Miller, the Department of Veterans Affairs (the "VA") concluded that the death benefits on PFC Humbyrd's SGLI coverage should actually have been $400,000 and not $100,000; however, the VA also noted that PFC Humbryd did not pay the applicable premiums for a $400,000 policy. *Id*. ¶ 17. Prudential determined that the death benefit to be paid was actually "$400,000, minus unpaid premiums" of $351.00.  *Id. ¶¶* 18, 19.

Before any further payments were made or claimed, a VA representative informed Prudential that PFC Humbyrd had, "on September 23, 2009, attempted to update his SGLI coverage because he no longer wished for his ex-wife, Rachel Elise Miller to receive any compensation from his SGLI coverage and that [PFC Humbyrd] believed his SGLI was updated at that time." *Id*. ¶ 20. Prudential alleges that, on or about September 23, 2009, PFC Humbyrd obtained a

> printed copy of the June 17, 2009, SGLI election form, made strike through markings over the entire principal beneficiary designation line, including the name Rachel Elise Miller, her address, her social security number, relationship to the Insured as "wife," and designation of proportion and type of payment she should receive upon the Insured's death. Additionally, the word "Single" was written above those strike through markings. The designation of Tammy Jean Humbyrd as contingent beneficiary remained unchanged. This altered version of the June 17, 2009 SGLI Election form was neither signed nor witnessed.

*Id*. ¶ 12; *see also* Complaint, Ex. B (copy of the unsigned SGLI election form).

On or about January 28, 2010, Humbyrd informed Prudential that she was protesting Miller's claim to the death benefit. *Id*. ¶ 20.

Prudential takes no position on who is owed the death benefits under the policy. *See, e.g., id*. ¶¶ 22, 23. However, Prudential asserts that the rightful claimant to the death benefit depends on which election form controls: (1) the original form dated June 17, 2009, naming Miller as the principal beneficiary; or (2) the unsigned SGLV election form wherein Miller's name and entitlements are stricken and Humbyrd, as a contingent beneficiary, remains unchanged. *Id*.

Additionally, on April 23, 2009, a Hawaii state court issued a divorce decree with respect to Miller and PFC Humbyrd. Declaration of Andre Penalver (Penalver Decl.), Ex. 2 (copy of divorce decree). The decree designates in section 7B that each party is awarded the "live insurance polic(ies) now held on *their* life . . . ." *Id*. (emphasis added). Miller stated in the form submitted to the Hawaii court that PFC Humbyrd's life insurance

1    policy designated his mother (Humbyrd) as the beneficiary of the $400,000 SGLI policy.

2    *Id.* (Asset and Debt Statement filed by Miller).[1]

3                                **III.  DISCUSSION**

4    **A.    Summary Judgment Standard**

5           Summary judgment is proper only if the pleadings, the discovery and disclosure

6    materials on file, and any affidavits show that there is no genuine issue as to any material

7    fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

8    The moving party is entitled to judgment as a matter of law when the nonmoving party

9    fails to make a sufficient showing on an essential element of a claim in the case on which

10   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

11   (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

12   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

13   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

14   present specific, significant probative evidence, not simply "some metaphysical doubt").

15   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if

16   there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

17   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

18   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

19   626, 630 (9th Cir. 1987).

20          The determination of the existence of a material fact is often a close question. The

21   Court must consider the substantive evidentiary burden that the nonmoving party must

22

23

24   _____

25          [1]In cases of SGLI policies, "divorce decrees, separation agreements or other state or
     municipal court documents are not binding on the determination of the proper beneficiary."
26   *Prudential Ins. Co. of America v. Ligon*, 915 F. Supp. 1183, 1186 (M.D. Al., 1996). Therefore
     the Court finds evidence submitted by Humbyrd regarding Miller and PFC Humbyrd's divorce
27   irrelevant. Additionally, such divorce decree evidence is also irrelevant because PFC Humbyrd
     made Miller a principal beneficiary of his SGLI after their divorce.

28

meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Evidentiary Issues**

The Court finds that the September 23, 2009, SGLV form, which both parties have relied upon in their filings and was attached to the initial complaint, is admissible as evidence in this case.

**C.    Defendants' Cross-Motions for Summary Judgment**

Both Defendants assert that no material fact exists with respect to who is the sole beneficiary of PFC Humbyrd's life insurance policy. However, both Humbyrd and Miller claim that they are individually entitled to one hundred percent of the proceeds under the policy. This case requires the Court to determine whether Miller or Humbyrd is the sole beneficiary of PFC Humbyrd's SGLI policy proceeds. Specifically, the Court must determine whether the unsigned SLGV that PFC Humbyrd submitted[2] to the appropriate

---

[2]Although Miller contends that it is unclear whether PFC Humbyrd himself submitted the form, the Court does not find this argument credible. In fact, Magill ordered his unit to update their forms if they so wished; six members of his unit did so, including Humbyrd. Magill Decl. ¶ 5. These officers submitted their forms to the Army administrative personnel for processing. *Id.* PFC Humbyrd's form was among the six forms that were not processed properly. Based on the foregoing, Miller has submitted neither competent nor credible evidence to support her argument on this point.

uniformed administrative service office for processing is sufficient to effect a change in designated beneficiary status.

Although Humbyrd and Miller debate the applicability of cases interpreting beneficiary designation changes with National Service Life Insurance ("NLSI") policies, such cases are unnecessary to the determination of this case. Case law and the applicable code directly dealing with policies under the Servicemen's Group Life Insurance Act (SGLIA) provide a sufficient means for resolving the issues before the Court.

The SGLIA provides, in pertinent part, as follows:

> Any amount of insurance under this subchapter in force on any member or former member on the date of the insured's death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of the insured's death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemembers' Group Life Insurance, or (2) in the administrative office established under section 1966(b) of this title if separated or released from service, or if assigned to the Retired Reserve, and insured under Servicemembers' Group Life Insurance, or if insured under Veterans' Group Life Insurance.

38 U.S.C. § 1970(a).

A designation of beneficiary remains in effect until properly changed by the insured or canceled for service-related reasons. 38 C.F.R. § 9.4(a). *See Ridgway v. Ridgway*, 454 U.S. 46, 55-56 (1981). The Court must strictly construe the statute, regardless of arguments of equity or fairness. *See id*., 454 U.S. at 62-63. Although the beneficiary designation provisions are strictly construed, writings other than the official form, if received before death, may be relevant in determining a deceased soldier's intended beneficiary. *Prudential Ins. Co. v. Smith*, 762 F.2d 476, 481-482 (5th Cir. 1985); *Stribling v. United States*, 419 F.2d 1350, 1354 (8th Cir. 1969).

The court in *Stribling* noted that no particular form is required and that any "simple written and signed designation or change of beneficiary" is sufficient. *Id.* at 1355

n. 12. The *Stribling* court did not, however, hold that any particular writing is required or that some writings, if filed, would not be given effect. The Fifth Circuit has cited *Stribling* with approval. *Prudential Ins. Co. of America v. Smith*, 762 F.2d 476, 481 n. 7. (5th Cir. 1985). After *Stribling*, the Eighth Circuit held that a soldier's failure to use the proper official form for designating a beneficiary "certainly . . . should not be a vehicle by which the serviceman's will or intent could be nullified." *Prudential Insurance Co. v. King*, 453 F.2d 925, 929 (8th Cir. 1971).

In *Smith*, the Fifth Circuit discussed the applicability of *Stribling* as follows:

> As we interpret Stribling's holding, it is only that the writing requirement of the applicable statute and regulation restricts the scope of relevant proof in SGLI beneficiary contests to signed writings *received* before the death of the soldier-insured. Indeed, since Stribling, we have recognized that writings other than the SGLI Election form, if *received* before death, may be relevant for the purpose of determining a deceased soldier's intended beneficiary. *Coomer v. United States*, 471 F.2d 1 (5th Cir. 1973) (recognizing effectiveness of makeshift form prepared by battalion personnel officer for SGLI designation of beneficiary). *See Smith v. United States*, 421 F.2d 634, 635 (5th Cir. 1970) (relying in part on Record of Emergency Data form to determine intent in pre-SGLI war risk insurance case); *Annotation, National Service Life Insurance: Change of Beneficiary*, 13 A.L.R.Fed. 6, § 25.
> Moreover, 38 C.F.R. § 9.16(f) (1980) expressly acknowledges that a signed and received will or "any other document" may be used to change a beneficiary. We therefore discern no reason to give the statutory and regulatory writing requirement so narrow a construction that a soldier's intent-manifested in forms signed and received by a uniformed service prior to his death-is defeated. To do so would impair a soldier's absolute right to designate the beneficiary of his or her SGLI policy and would constitute an unwarranted deviation from the long-established aim of paying policy proceeds according to the intent of the soldier-policy holder.

762 F.2d at 481. The *Smith* court also noted that:

> Intent of the policy holder has been central to resolution of beneficiary contests in group life insurance cases generally, *Murdock v. Equitable Life Insurance Society*, 714 F.2d 474, 476 (5th Cir. 1983), and in the war risk insurance cases in the days before SGLI, *Smith v. United States*, 421 F.2d 634, 635 (5th Cir.1970); *Annotation, National Service Life Insurance: Change of Beneficiary*, 13 A.L.R. Fed. 6. *In adding a writing requirement in the SGLI Act, Congress gave no evidence of a purpose to abandon this fundamental search for intent* and, instead, to engage in a formalistic analysis of the status of alleged beneficiaries. The writing requirement serves to promote administrative ease in identifying the

intended beneficiary. Of course, any inquiry into status (who is the lawful spouse?) may be necessary where the writings in issue contain only a "by law" designation without other indications of intent.

*Id*. at 482 n. 8 (Citations omitted) (emphasis added).

The foregoing suggests that manifestations of intent may be examined when determining the validity of a beneficiary designation change. However, the outer boundaries of looking to intent has been circumscribed by courts. *See, e.g., Coomer v. United States*, 471 F.2d 1 (5th Cir. 1973). At one time, the Ninth Circuit held that "a valid beneficiary designation could take place as long as the intent of the insured was clearly manifested." *Coomer,* 471 F.2d at 4 (citing *Sears v. Austin*, 292 F.2d 690 (9th Cir. 1961)). In *Sears*, the Ninth Circuit upheld a beneficiary designation change even though the soldier had never submitted his election form to the administrative personnel. 292 F.2d at 693. However, in discussing *Sears'* lack of continuing validity, the *Coomer* court pointed out that:

> [i]n response [to *Sears*] Congress, in 1967, amended the Act to emphatically require that a writing must be *received* in the employing office. 5 U.S.C. § 8705(a). The accompanying Senate Report specifically stated that the purpose of the amendment was to negate the *Sears* decision which, if followed, could lead to administrative difficulties and impede the speedy payment of insurance claims. By its action in amending the Federal Employees Group Life Insurance Act, Congress made clear the standard that must be applied here. While, as mentioned previously, there is no requirement that Coomer's beneficiary designation form exist in his service file at the time of death, the form must have been "*received*" by the Navy at some point before death if the designation of his father is to be given effect.

*Id*. (Citation omitted) (emphasis added).

The foregoing suggests that a court may, in certain cases, look beyond the formalistic approach set out in the SGLI to determine beneficiary status consistent with the its writing requirement. When courts have looked beyond the formalistic and, instead, looked to intent of the insured, the courts have focused on the proper administrative personnel's receipt of a soldier's writing containing a change in beneficiary designation.

1  *See, e.g., Coomer v. United States*, 471 F.2d at 5-6.[3] "Whatever receipt means, it certainly

2  occurs when the serviceman hands the writing naming the beneficiary to the person whom

3  the Navy has put in charge of receiving and maintaining the beneficiary designation

4  forms." *Coomer*, 471 F.2d at 5. The *Coomer* court further stated that "what happens to

5  the form after it is received by the official record keeper cannot vitiate the validly

6  expressed intent of the insured." *Id*.

7      With the foregoing in mind, the Court turns back to the facts at issue in this case.

8  Here, Miller provides no competent evidence or credible argument to support a finding

9  that PFC Humbyrd did not personally submit the SGLV form at issue. Indeed, it is the

10  Army's personnel services that had in its possession the SGLV forms of PFC Humbyrd

11  and five of his unit members. Magill Decl. ¶ 7. In this case the Army's personnel's

12  undisputed failure to finalize PFC Humbyrd's SGLV prevented PFC Humbyrd from

13  signing the form. *See* Magill Decl. ¶ 6. This occurred because the Soldier Readiness

14  Processing ("SRP") protocol for completing the beneficiary designation change requires a

15  solider to (1) obtain from administrative personnel a copy of the SGLV election form on

16  file, (2) make the desired changes, (3) submit it to Army personnel services for entry, (4)

17  wait for Army services to return the entered document for soldier verification and

18  signature. Magill Decl. ¶ 3. In this case, the Army services personnel staff misplaced PFC

19  Humbyrd's and his fellow unit members' election forms and it was not until after PFC

20  Humbyrd died in a car accident that this issue came to light and was too late for PFC

21

22  ───────────────

23      [3]The parties devote much of their briefing on summary judgment to determining whether
24  manifest intent or strict compliance controls the Court's inquiry in resolving the issue presented.
    In so arguing, the parties debate whether the "manifest intent" was overruled by statute.
25  *Compare Untied States v. Pahmer,* 238 F.2d 431, 433 *and Sears v. Austin*, 292 F.2d 690 (9th Cir.
    1961) (applying a manifest intent standard) *with Coomer*, 471 F.2d at 4 (citing 5 U.S.C. §
26  8705(a), which overruled *Sears* by statute as to the issue of manifest intent where the change in
    designation is drafted but not received). In short, the manifest intent of an insured may still be
27  considered in certain instances, but Congress circumscribed this standard when it limited the
    validity of *Sears* and added a writing requirement to the SGLI.

28

Humbyrd to sign the document. *See* Magill Decl. ¶ 6. Based on the foregoing, the Court finds that the Army personnel responsible for receiving PFC Humbyrd's SGLV form did in fact receive his change form, though unsigned. Miller has not supplied the court with competent and/or credible evidence to the contrary.

As discussed above, receipt of the SGLV by the appropriate administrative services is the critical fact that must be established before a court can reach the issue of a soldier's intent. *See, e.g., Coomer*, 471 F.2d at 5-6. Because PFC Humbyrd's SGLV change request had been received and only remained unfiled due to the oversight of Army administrative personnel, the Court may reach the issue of his intent with the SGLV election form; i.e., whether he intended to remove Miller as a beneficiary and leave Humbyrd as the sole beneficiary under his SGLI policy.

PFC Humbyrd's September 23, 2009, SGLV election form contains a strikethrough that completely eliminates Miller's entire name. Not only is Miller's name completely struck, but the document also contains a strikethrough for each of Miller's entitlements (e.g., percentage payout from the policy) and leaves nothing left without a strikethrough that pertains to Miller's status as a beneficiary.[4] Notably, no strikethrough was made as to Humbyrd, the other named beneficiary. Additionally, PFC Humbyrd is one of six members in Magill's unit that elected to update their insurance forms as part of SRP. This fact lends additional uncontroverted support to Humbyrd's argument that she is entitled to claim the full benefit of PFC Humbyrd's SGLI policy proceeds.

Considering the entire record before the Court, the Court can only conclude that PFC Humbyrd intended to remove Miller as his beneficiary and leave Humbyrd as the

---

[4]Miller argues that the strikethrough could also be characterized as an attempt to underline Miller's name. However, review of the document militates against such an interpretation: Miller's name has been completely stricken with multiple passes of a writing instrument. Miller's argument is not credible, and Miller has not supplied any competent evidence to the contrary.

sole beneficiary under the policy. Miller has not supplied competent evidence to the contrary or adequate authority that prevents the Court from determining PFC Humbyrd's intent with respect to the SGLV in which he struck Miller's designation as the primary beneficiary to his SGLI policy proceeds.[5]

Therefore, the Court grants summary judgment on this issue in favor of Humbyrd.

**D.    Humbyrd's Cross Claims**

In addition to claiming beneficiary status, Humbyrd asserts cross claims against Miller for unjust enrichment and conversion to recover the $100,000 already paid by Prudential to Miller. The parties have not sufficiently briefed the Court on whether and on what basis Miller should or should not be required to return the $100,000 that Prudential paid her on the improper belief that she was the sole beneficiary under the policy. Therefore, Defendants shall file simultaneous supplementary briefing, not to exceed ten pages, on or before September 16, 2011. This briefing shall include, among other relevant matters, the extent to which the parties' position as Defendants in this action has any effect on Humbyrd's cross claim for unjust enrichment or conversion.

Therefore, the Court reserves ruling on the issue of Humbyrd's cross claims.

**E.    Miller's Motion to Strike**

Because the Court did not rely on paragraph eight of Magill's declaration for determining the issues presented herein, the Court denies without prejudice Miller's motion to strike the paragraph from the record.

---

[5] Even if the Court were to find the NSLI cases analogous to SGLI cases and applied the more stringent test set out in *Fagan v. West*, 13 Vet. App. 48, 57 (1999), Humbyrd would prevail because she has submitted competent evidence that, on a clear and convincing basis, establishes that PFC Humbyrd intended to disinherit Miller and make Humbyrd the only beneficiary when he took the overt action of obtaining the necessary form and making changes to beneficiary status on the SLGV at the administrative office of the Army. Miller has not provided competent evidence to the contrary. Thus, under either standard, Humbyrd prevails as the sole beneficiary.

For the same reason this ruling also applies to Miller's motion to strike Lt. Colonel Preston's statement found within the Declaration of Andre Penalver (Dkt. 26).

**F.   Miller's Counterclaim**

Humbyrd moves to dismiss Miller's counterclaim. Dkt. 42 at 8. Miller's counterclaim is predicated on the theory that Humbyrd's "continuing assertion of groundless legal theories has caused her damage." Dkt. 35 at 22. Because the Court has determined that Humbyrd has asserted a viable claim for PFC Humbyrd's SGLI proceeds, Miller's counter claim lacks merit and, therefore, Miller's counterclaim is dismissed.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that

(1)   Humbyrd's motion for summary judgment (Dkt. 25) is **GRANTED in part** and **RESERVED in part** as discussed herein;

(2)   Miller's motion for summary judgment is **DENIED**;

(3)   Miller's motion to strike is **DENIED**; and

(4)   Defendants **SHALL file** simultaneous supplementary briefing by September 16, 2011.

DATED this 6th day of September, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 12